## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IVANA M.,**<br><br>      **Plaintiff,**<br><br>   **v.**<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>      **Defendant.** | Civ. No. 20-07263 (KM)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Ivana M. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Ivana M. was not disabled from January 8, 2016, through March 6, 2019, the date of the decision. Ivana M. claims the ALJ's decision is not supported by substantial evidence.

I find that the ALJ's determinations that Ivana M.'s physical and mental limitations did not render her entirely unable to engage in substantial gainful activity was supported by substantial evidence. However, because I find that the ALJ improperly rejected without explanation certain probative evidence supporting Ivana M.'s impairment of severe fatigue related to her diagnosis of chronic fatigue syndrome ("CFS"), this Court will remand for further proceedings.

1

I.     **BACKGROUND**[1]

Ivana M. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on May 17, 2016, alleging disability as of January 8, 2016. (AR 10.) Ivana M.'s application was denied initially and on Reconsideration. (AR 83–133.) Ivana M. requested a hearing before an ALJ to review her application de novo. (AR 134–35.) A hearing was held on January 4, 2019, before ALJ Douglass Alvarado, who issued a decision on March 6, 2019. ALJ Alvarado denied disability at step five of the sequential evaluation, on the ground that, although Ivana M. could no longer perform her past relevant work, she is capable of adjusting to sedentary work that accommodates her limitations and exists in significant numbers in the national economy. (AR 10–24.)

Ivana M. requested Appeals Council Review of ALJ Alvarado's decision, but her request was denied on April 13, 2020. This denial rendered ALJ Alvarado's decision the final decision of the Commissioner. (R 1–9.) Ivana M. now appeals that decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

II.     **DISCUSSION**

**A. Five-Step Process and this Court's Standard of Review**

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

---

[1]     Certain citations to the record are abbreviated as follows:

DE = docket entry in this case

AR = Administrative Record (DE 8)

Pl. Br = Plaintiff's brief in support of its remand (DE 11)

Def. Br. = Commissioner's brief in opposition to remand (DE 13)

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**RFC and Step 4:** Determine the claimants "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474

3

F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of issues of law. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ, however, are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where

the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Alvarado undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

Although Ivana M. did attempt to start her own business, providing virtual assistance to small businesses, the ALJ concluded that was an unsuccessful work attempt, because Ivana M. earned a total of only $1,312, working for approximately two hours per week. (AR 12.) Therefore, the ALJ found that Ivana M. had not engaged in substantial gainful activity from the alleged onset date of January 8, 2016, through the date of her hearing, January 4, 2019. (*Id.*)

### Step 2

The ALJ found that Ivana M. had the following severe impairments: degenerative joint disease, fibromyalgia, Lyme disease, bartonella, chronic fatigue syndrome, carpal tunnel syndrome, Morton's neuroma, metatarsalgia, graves hyperthyroidism, depression, and anxiety disorder. (AR 12–13.)

Because there is no direct test to detect fibromyalgia, ALJ Alvarado undertook a relatively lengthy analysis of Ivana M.'s fibromyalgia under Social Security Ruling ("SSR") 12-2p, which sets forth the standards to determine if a claimant has a medically determinable impairment of fibromyalgia. (AR 13–14.) Under this standard, the ALJ determined that Ivana M. did have severe fibromyalgia. (AR 14.) Although the ALJ also determined that Ivana M. suffered from chronic fatigue syndrome, he did not undertake a similar analysis under the relevant ruling, SSR 14-1p.

The ALJ accepted the conclusion that Ivana M. had been diagnosed as double allele homozygous for three MTHFR genes. He concluded, however, that although there was record evidence of relevant symptoms, the objective medical

5

evidence did not support the conclusion that Ivana M.'s resulting methylation deficiencies were severe. (AR 14.)

### Step 3

With respect to her severe impairments, Ivana M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 18). ALJ Alvarado paid particular attention to medical listings 1.00 (Musculoskeletal System) and 12.00 (Mental disorders).

First, ALJ Alvarado declined to find that Ivana M.'s impairments met the criteria for medical listing 1.02 (major dysfunction of a joint). He particularly noted the lack of evidence supporting the listing's requirement that Ivana M. be "unable to ambulate effectively" or that she be "unable to perform fine and gross motor movements effectively." (AR 14.)

Second, ALJ Alvarado declined to find that Ivana M. met the requirements of listing 14.09 (inflammatory arthritis), He reasoned that she "does not have persistent deformity or inflammation in one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively or inflammation or deformity in one or more peripheral joints in each upper extremity resulting in the inability to perform fine or gross movements effectively." (AR 14.)

Third, ALJ Alvarado found that Ivana M.'s mental impairments, both individually and in combination, did not meet the criteria of medical listings 12.04 and 12.06. Specifically, the "paragraph B" criteria were not satisfied. To satisfy the paragraph B criteria, a claimant's mental impairments "must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (*Id.*)[2] In particular, the ALJ found that Ivana M. had

---

[2]     A claimant's affective disorder meets or medically equals listing 12.04 (Depressive, bipolar and related disorders) when it either satisfies both the paragraph

6

only mild limitations in the areas of "understanding, remembering, or applying information;" "interacting with others"; and "adapting or managing oneself" while she had moderate limitations in "concentrating, persisting, or

---

A and paragraph B criteria, or satisfies the C criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

*Id.*

"'Marked' as a standard for measuring the degree of limitation . . . means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

To meet or medically equal Listing 12.06 (Anxiety and Compulsive Disorders), a claimant must medically document, an anxiety, panic, or obsessive-compulsive disorder *and* the same "Paragraph B" criteria as for medical listing 12.04, *supra*. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06; *see also* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

maintaining pace." (AR 15.) ALJ Alvarado noted Ivana M.'s fatigue when
determine she had moderate limitations in "concentrating, persisting, or
maintaining pace." (*Id.*)

ALJ Alvarado also found that Ivana M. did not meet the "paragraph C"
criteria. (AR 16.) ALJ Alvarado also considered Ivana M.'s degree of mental
limitation at the next step, when he determined Ivana M.'s RFC.

### RFC and Step 4 – Ability to Perform Past Work

ALJ Alvarado began his RFC analysis by explaining that he followed a
two-step process in which he first determined whether Ivana M. had an
underlying medically determinable physical or mental impairment "that can be
shown by medically acceptable clinical and laboratory diagnostic techniques—
that could reasonably be expected to produce [Ivana M.'s] pain or other
symptoms." (AR 17.) He then explained that in the second step, he "must
evaluate the intensity, persistence, and limiting effects of [Ivana M.'s]
symptoms to determine the extent to which they limit [her] functioning." (*Id.*)
To do this, as he noted, an ALJ is required to look to objective medical
evidence, or to the entire case record where objective medical evidence does not
substantiate Ivana M.'s statements about "the intensity, persistence, and
limiting effects claimant's symptoms." (*Id.*)

ALJ Alvarado concluded that Ivana M.'s medical record "reflected a
history of difficulties." (*Id.*) He concluded, however, that "the objective findings
do not support the degree of functional limitation alleged." (AR 19.) Although a
number of doctors "opined [that there were] significant limitations," these
limitations were not supported with "objective testing and findings." Where
there were objective assessments, he wrote, "the results did not reflect the
degree of limitation put forth by [Ivana M.] or her treating doctors." (*Id.*) The
ALJ concluded that Ivana M.'s "medically determinable impairments could
reasonably be expected to cause the alleged symptoms; however, [Ivana M.'s]
statements concerning the intensity, persistence and limiting effects of those

symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

I find that the ALJ's determination that Ivana M.'s physical and mental limitations did not render her disabled is supported by substantial evidence. I find to the contrary, however, as to the ALJ's finding as they relate to Ivana M.'s fatigue. As to fatigue, the ALJ reviewed the findings and opinions of several medical sources, including doctors who actually treated Ivana M., and noted that "more weight is afforded to the opinion of a treating source as the treating source is most often in the best position to provide a detailed, longitudinal picture of the claimant's medical impairments." (AR 20.)

First, Dr. Nancy Lentine reported that Ivana M. would be "off task 25% or more of the typical workday and would need supine rest for at least a total of 1.5-2 hours during day at unpredictable intervals," in part because of chronic fatigue syndrome. (AR 20.)[3] Next, Dr. Daniel Cameron similarly reported that Ivana M. would be off task 25% or more of the workday, would need to "lie down or recline" at least 1.5-2 hours during the day "at unpredictable intervals," and "would be absent from work more than 4 days per month" as a result of her impairments. (*Id.*) Third, Dr. George Knod, after examining Ivana M. and reviewing her treatment records for private disability insurance purposes, "opined that the claimant[']s multiple symptoms of chronic fatigue with associated cognitive impairment was significant enough to interfere with the performance of ordinary work duties on a regular basis." (AR 21.) Fourth, Dr. Wetheimer opined that as a result of chronic health problems related to Lyme disease, Ivana M. would be "expected to miss work on a regular basis (more than five days per month)." (*Id.*)[4]

---

[3]     ALJ Alvarado wrote that there are "no treatment records to support these conclusions." (AR 19.) Dr. Lentine, however, provided more than one hundred pages of treatment notes. (AR 1531–1632.) It is possible that ALJ Alvarado meant that the information in the treatment records, in his opinion, did not *support* the conclusions, but that is unclear.

[4]     The ALJ also reviewed the opinion of Jason Barone, DPT, who noted that Ivana M. became "fatigue[d] very quickly with limited physical activity and once fatigued it

The ALJ acknowledged that these four doctors were "acceptable medical sources who have first-hand knowledge of the claimant's impairments and functional limitations." He concluded, however, that "their opinions are not supported to the extent asserted." (*Id.*) Importantly, ALJ Alvarado concluded that their opinions "contain no functional limitations other than the need to rest and that the claimant may be off task." (*Id.*) He therefore gave the doctors' opinions only "partial weight," but seems to have accepted their opinion that Ivana M. would need to rest and would be off-task during the workday. (*Id.*)

Based on these findings, at step four, ALJ Alvarado concluded that Ivana M. was unable to perform her past relevant work as an administrative assistant, administrative clerk, or executive secretary because the "exertional and mental demands of the claimant's past work exceeded the residual functional capacity above." (AR 22.)

ALJ Alvarado defined Ivana M.'s RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she is able to stand and stretch at the workstation after 1 hour of sifting [*sic*]; and is able to sit for 1-5 minutes at the workstation after 30 minutes of standing or walking. She can frequently handle and finger with right hand. She can occasionally climb ramps, stairs; can never climb ladders, ropes and scaffolds; and can occasionally balance, stoop, kneel, crouch and crawl. She can never be exposed to unprotected heights, hazardous moving mechanical parts or operate a motor vehicle. The claimant is able to understand, remember and carry out simple instructions with only occasional changes to essential job functions; and is able to make simple work-related decisions.

(AR 16).[5] Nowhere in the RFC analysis, however, is Ivana M.'s fatigue considered.

___

will take her approximately 24-36 hours to recuperate." (AR 21.) Barone is a treating physical therapist and thus not an "acceptable medical source," but the ALJ nevertheless gave his opinion "partial weight."

[5]     The Administration defines "sedentary work" as involving:

**Step 5**

At step five, ALJ Alvarado explained that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 23.) Accordingly, he found that Ivana M. is not disabled under the SSA. (*Id.*)

To make this determination, ALJ Alvarado relied on the testimony of a vocational expert, who testified that Ivana M. would still be able to perform the following low-skill sedentary occupations: semi-conductor bonder, (Dictionary of Occupational Titles ("DOT")) 726.685-066, Taper, circuit layout, (DOT) 017.684-010; and label pinker, (DOT) 585.685-062.[6] (AR 23.) There are between 9,490 and 22,470 positions in these three occupations in the United States.

Unmentioned in the ALJ's opinion, but relevant here, is the vocational expert's testimony, in response to questions from the ALJ and Ivana M.'s attorney, that any individual who could only do low-skilled sedentary work could not be employed at a competitive workplace if she were to be "off-task 15 percent or more of the workday"; "absent from work two or more days per

---

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

[6]    The opinion reads "label tinker" but the corresponding number refers to "label pinker," which is one who "Tends machine equipped with pinking attachment that cuts strips of labeling material into individual labels: Positions roll of material on holder and inserts end in feeding mechanism. Turns dial to set counter for specified number of labels to be cut. Starts machine and observes cut labels to detect cutting defects. Removes defective labels and notifies machine fixer to adjust machine. Packs specified number of labels in box. May tend machine that cuts labels without pinking and be designated Label Cutter (narrow fabrics)." *See* Dictionary of Occupational Titles, https://occupationalinfo.org/58/585685062.html. The vocational expert testified that there are 14,150 such jobs available nationally.

11

month"; or "needed to lay down for no less than 20 minutes, at least once during the workday, actually physically recline." (AR 79–80.) The ALJ asked the questions that prompted these responses only after eliciting from the vocational expert the potential jobs listed above for a hypothetical person with Ivana M.'s background and impairments, but without mention of the fatigue-related need to be off-task, rest, and miss work. (AR 77–78.)

### C. Ivana M.'s Challenge

Ivana M. challenges the Commissioner's decision on a variety of grounds. Many of her arguments are unavailing, but two interrelated arguments successfully demonstrate that the ALJ's decision was not supported by substantial evidence. In this case, remand is proper because the ALJ's opinion both contains contradictory findings, *Burnett*, 220 F.3d at 119–20, and does not "explicitly weigh all relevant, probative and available evidence" in the record, especially concerning the effect of chronic fatigue. *Adorno*, 40 F.3d at 48.

Ivana M. argues that although the ALJ found that she did have a "severe impairment" of chronic fatigue syndrome, he failed to take it into account when considering her RFC. (Pl. Br. at 17–20.) Relatedly, she argues that the ALJ erroneously rejected all supportive and probative opinion evidence in the record without giving sufficient reasons for doing so. (*Id.* 20–25.) These two errors, together, justify remand.

### 1. Analysis

According to the Administration, CFS "is a systemic disorder consisting of a complex of symptoms that may vary in frequency, duration, and severity." SSR 14-1p. CFS is "often misunderstood" and there are "no specific laboratory tests to diagnose" it. Centers for Disease Control and Prevention, "What is ME/CFS?" https://www.cdc.gov/me-cfs/about/index.html. The Administration recognizes, however, that CFS can be related to other conditions and, if it is sufficiently severe, can be the basis for a disability determination. SSR 14-1p. The Administration, however, requires that opinion

evidence from examining doctors be supplemented by medical or laboratory findings for a claimant to demonstrate that she has a "medically determined impairment" of CFS. *Id.* The recurring fatigue that is the key sign of CFS can, of course, be a symptom of another medical condition. The essential question for the ALJ is whether Ivana M.'s various impairments singly *or in combination* render her unable to engage in substantial gainful activity.

Although the ALJ determined at Step 2 that Ivana M. has a severe impairment of CFS, his opinion does not discuss her CFS any further. Nor does the ALJ cite or discuss the agency ruling on CFS, SSR 14-1p. The Commissioner points to some scattered mentions and vague discussions of symptoms in the opinion and declares that the ALJ thus "considered [CFS] throughout the sequential evaluation" (Def. Br. at 18–19), but these mentions do not rise to the level of the necessary analysis. This failure alone might not suffice to require remand, but it is compounded by the ALJ's failure to grapple with evidence from certain treating physicians that would have required a finding of disability.

As detailed above, four different doctors, whose testimony was given partial weight by the ALJ, stated that due to her various impairments, including CFS, Ivana M. would have to be off-task 25% or more of the day, lie down for more than 1.5 hours per day at unpredictable intervals, or miss several days of work each month. (AR 20–21.) The vocational expert testified that any one of those limitations would make Ivana M. unemployable. (AR 79–80.) Thus, if the doctors' opinions were credited, Ivana M. would be considered disabled and unable to undertake substantial gainful activity. The ALJ, however, gives no specific reason for rejecting the opinions of these doctors and thus, does not explicitly weigh their opinions. This is problematic because "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales*, 225 F.3d at 317 (citation

omitted). Drs. Lentine and Cameron, specifically, treated Ivana M. over lengthy time periods, documenting her ongoing fatigue. (AR 1375–1494, 1531–1632.)

If the ALJ rejected the doctors' opinions that Ivana M. must rest, be off task, or miss work due to her impairments, he did not specify his reasons for doing so. The Third Circuit has stated that an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence." *Morales*, 225 F.3d at 317. And a sufficient basis must be stated; the ALJ "cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ pointed to contradictory medical evidence as reason to reject the doctors' opinions that Ivana M. was disabled on certain physical and mental bases. (AR 18–20.) In contrast, however, the ALJ pointed to no medical evidence to suggest that her fatigue was less severe than the four doctors found it to be. The ALJ's determination that Ivana M.'s fatigue would not prevent her from working in low-skill, sedentary occupations, then, is not supported by substantial evidence, because it does not explain why he discounted probative medical evidence, which, if credited, would support a claim of disability.

The ALJ's opinion can also be read to accept the doctors' assertion that Ivana M. would need to rest and be off-task during the workday, though the ALJ did not quantify the extent of rest she would need. (AR 21.) Upon this reading, however, the case still must be remanded. If the ALJ did credit the doctors' opinions that Ivana M. would need to rest and be off-task during the workday, that fact was not included in his RFC analysis, nor in the initial hypothetical he put to the vocational expert. (AR 78–79.) Because this fact, which tends to show that Ivana M. would be unable to work in any occupation, was not included, the RFC analysis fails the substantial-evidence test.

It is possible (but not certain) that the ALJ could properly arrive at a similar RFC on remand. Remand is nonetheless necessary to allow the ALJ to more carefully evaluate objective medical evidence supporting Ivana M.'s claim that her fatigue (whether from CFS or a combination of conditions) requires her

to be off-task, miss work, and rest during the workday, to the extent that she is disabled.

### III.   CONCLUSION

For the foregoing reasons, the ALJ's decision is REMANDED for further proceedings. An appropriate order accompanies this Opinion.

Dated: October 13, 2021

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**